hPER CURIAM. *
We granted certiorari in this case to determine whether the trial court’s finding that an obstruction on defendant’s premises did not constitute an unreasonable risk of harm to plaintiff is manifestly erroneous or clearly wrong.
FACTS AND PROCEDURAL HISTORY
On November 4, 1994, Sandra Ludwig accompanied her daughter’s middle school class to the Jefferson Performing Arts Center to see a performance of Peter Pan. During the second act of the play, Mrs. Ludwig went into the lobby to use the restroom. As she returned to her seat in the darkened auditorium, Mrs. Ludwig struck her leg on the protruding metal base of an “acoustical shell,” a large piece of equipment which was being stored near the rear aisle of the theater during the performance in question.[1] Several months later, Mrs. Ludwig and her husband, Walter, filed suit against the Jefferson Performing Arts Society (“JPAS”), the nonprofit organization that presented the play.[2] The case was tried as a bench trial in February 1997.
At the close of the evidence, the trial court rendered judgment in favor of defendant and dismissed plaintiffs’ suit with prejudice, finding that Mrs. Ludwig’s own negligence was the sole 1 ?cause of her injuries. Plaintiffs appealed. The court of appeal affirmed the trial court’s judgment, with one dissent ,[3]
Upon the application of plaintiffs, we granted certiorari to consider the correctness of this ruling.[4] The sole issue presented for our review is whether the trial court’s determination that Mrs. Ludwig’s negligence was the sole cause of the accident is supported by the record.
DISCUSSION
It is well settled that the operator of a darkened theater is not an insurer of the safety of its patrons and is not required to eliminate every conceivable source of danger on its premises. However, the operator owes a heightened duty to its patrons to keep the premises safe. Cassanova v. Paramount-Richards Theatres, Inc., 204 La. 813, 16 So.2d 444 (1943).
The record reveals that Mrs. Ludwig’s injury resulted when she struck the protruding metal base of a piece of stage equipment which was being stored near the rear aisle of the theater during the performance in question. Dennis Assaf, the Executive Artistic Director of the JPAS, testified that there was nothing on or around this equipment to warn patrons of its presence, and that no announcements *1269 are made during the performance cautioning patrons to be careful walking along the back wall of the auditorium. The evidence further shows that during the performance, it was particularly dark in the rear of the auditorium, with the only light in that area coming from the red “exit” signs over the doors. Based on all these factors, we conclude the record clearly demonstrates JPAS was negligent in storing this equipment in a darkened theater in such a way such that it protruded into an aisle used by patrons and in failing to warn patrons of the presence of these devices.
Nonetheless, the record also reveals some negligence on the part of Mrs. Ludwig. Mrs. Ludwig testified that when she re-entered the auditorium from the lobby, she did not allow her eyes to adjust to the darkness, but immediately proceeded along the rear aisle, the same way she had left to go to the restroom. While Mrs. Ludwig denied that she was distracted by the events on stage as she walked to and from the restroom during the second act of the play, the darkened condition of l3the theater during the performance created a heightened duty on her part to proceed with caution as she returned to her seat.[5]
Thus, while we find Mrs. Ludwig bears some fault for the accident, we find the trial court was clearly wrong in not assigning any fault to JPAS. We must now determine the percentage of fault to be assigned to each party.
In Clement v. Frey, 95-1119 (La.1/16/96), 666 So.2d 607, we held that when a trial court’s allocation of fault is manifestly erroneous or clearly wrong, the reviewing court must lower (or raise) the allocation of fault to the highest (or lowest) point which is reasonably within the trial court’s discretion. Applying this rule to the instant record, we find Mrs. Ludwig’s fault is relatively slight in comparison to JPAS’s fault. JPAS chose to store the equipment in an area of the theater where it knew patrons would walk, and in such a way that a portion of the part of the equipment jutted into the aisle. JPAS did not place barricades around the equipment, nor did it mark the equipment in such as way as to warn patrons of the danger it presented. While Mrs. Ludwig did not use the requisite degree of caution while walking in the darkened theater, we find the highest degree of fault the trial court could have assigned to her based on the record is twenty percent. The remaining eighty percent of the fault must be allocated to JPAS.
Given the disposition of this case in the trial court, there was no award of damages made to plaintiffs.[6] Therefore, we must remand the case to the court of appeal to make an appropriate award of damages based on the record, after briefing and argument by the parties on that issue.
LDECREE
For the reasons assigned, the judgment of the court of appeal is reversed. Judgment is hereby rendered in favor of plaintiffs, Sandra M. Ludwig and Walter A. Ludwig, and against defendant, Jefferson Performing Arts Society. Fault is allocated in the amount of twenty percent to plaintiffs and eighty percent to defendant. The case is remanded to the court of appeal for a determination of damages based on the record, with briefing and argument *1270 by the parties on that issue. All costs in this court are assessed to defendant.
KNOLL, J., dissented in part. In my view the defendant is 100% at fault.

 Johnson, J., not on panel. Rule IV, Part II, § 3.

.These acoustical shells, which are used to enhance the sound properties of a choir or symphonic production, are approximately six feet high, six feet wide, and two-and-a-half to three feet deep, and sit on a four-wheeled metal base that is. about one foot high and which protrudes outward approximately one foot.

. Plaintiffs also filed suit against the Jefferson Parish School Board, in its capacity as owner of the auditorium, but later dismissed this claim.

. Ludwig v. Jefferson Performing Arts Soc’y, 98-48 (La.App. 5th Cir.6/30/98), 714 So.2d 1268.

. Ludwig v. Jefferson Performing Arts Soc’y, 98-2431 (La. 11/25/98), 729 So.2d 580.

. The trial court made a factual finding that Mrs. Ludwig was distracted by the play as she returned to her seat. However, the only evidence in the record on this point is Mrs. Ludwig's testimony, in which she denies she was distracted. Accordingly, we conclude there is no basis for the trial court's finding in this regard.

. Mrs. Ludwig developed a hematoma at the injury site which became badly infected. She was given antibiotics and instructed to see an infectious disease specialist if the infection did not clear up within two days. When it did not, she was ultimately referred to a surgeon to have the abscess opened and drained. After the wound healed, Mrs. Ludwig continued to seek treatment for more than one year for pain in her leg. Mrs. Ludwig testified that she has a permanent scar on her left shin and that she still experiences shooting pains in her leg "every now and then” as a result of the accident.