I JAMES L. CANNELLA, Judge.
In Ludwig v. Jefferson Performing Arts Society, 98-C-2431, (La.7/2/99), 737 So.2d 1267, the Louisiana Supreme Court remanded this case for a determination of damages. In its decision reversing the trial court and Court of Appeal, the Supreme Court found defendant, Jefferson Performing Arts Society (JPAS) to be 80% negligent and plaintiff, Sandra Ludwig, to be 20% negligent for injuries which she received when she tripped over an object in the JPAS facility.[1]
On November 4, 1994, plaintiff was acting as a chaperone for her child’s school at a performance of Peter Pan produced by defendant and held at the East Jefferson High School Auditorium. During the second act of the show, while the 13audience lights were dimmed, she left her seat to exit the auditorium in order to use the restroom. In order to do so, plaintiff proceeded to the back of the auditorium, turned to her left, passed a group of acoustical shells which were folded into each other and stored against the wall between two sets of exit doors and out through the nearest set of doors. She returned the same way, but as she proceeded along the back aisle, she struck her left shinbone on a protruding section of the acoustical shells, which were in the approximate shape of an “L”. After striking her leg, plaintiff experienced extreme pain in the lower part of her left leg below the knee. She sat on the “shelf’ of the acoustical shell against which she had collided, holding her leg, waiting for the performance to end. While there, a JPAS volunteer noticed her and brought some ice. Plaintiff remained there during the rest of the show holding the ice on the injury. At the conclusion, another chaperone, Bonnie Pierson, helped her walk to the school bus that had transported the students and chaperones to the auditorium. Although she was in pain and it was hard for her to walk, that evening she and her husband went to Baton Rouge to visit her dying grandmother. They believed that the leg would be bruised and expected it to get better. Plaintiffs stayed at her mother’s house in Baton Rouge. The next day, plaintiffs leg hurt so much that she began to worry. As a result, they returned home for medical treatment, going to Chalmette *657 Medical Center Emergency Room. It was later determined that her leg developed a severe hematoma and abscess at the injury site which was causing her severe pain.
Plaintiff was next treated by an infectious disease specialist, Dr. Michael Hill. Dr. Hill first saw her on November 9, 1994. He diagnosed an infection and abscess in the area of the injury. Dr. Hill attempted to drain the abscess with a |4needle, but was unsuccessful because of the quantity of infected fluid. Dr. Hill then referred her to a surgeon, Dr. Francisco Soler.
Dr. Soler surgically opened the site of the abscess with a scalpel and drained the fluid. He prescribed anti-inflammatory medication and antibiotics. In addition, he instructed plaintiff to clean the surgical site daily by flushing it with hydrogen peroxide and putting antibiotic cream into the wound with a Q-tip. She had to clean, re-pack and re-bandage the wound daily for two weeks and was instructed to keep her foot elevated during that time. Dr. Soler saw plaintiff six times from November to January of 1995, when she was discharged from treatment. However, she complained that she was still suffering pain from the injury. At that time, Dr. Soler told her that she could expect to have pain for up to a year following the injury. Because of that information, she did not seek further treatment until July of 1995, although her leg still hurt.
In July of 1995, plaintiff returned to Dr. Soler because her pain did not improve, but instead continued to be severe. Dr. Soler performed a Venous Doppler test to rule out blood clots. He subsequently sent her to Dr. Martin Houser, a neurologist. Dr. Houser determined that plaintiff did not have specific nerve damage, but that the problem was due either to the fibrosis or scarring in the injured area, or from the changes caused by the actual inflammation, abscess and the residual scar. Dr. Soler testified that the importance of this finding is that there was still an active process in the injury. He noted that the fibrosis could cause nerve damage.
During this time, plaintiff also underwent a triple bone scan, which was negative, and a Magnetic Resonance Imaging test (MRI), which was performed in October of 1995. The MRI showed that the trauma and infection had produced |Bscarring and that some fluid might still be collected in the area of the wound. On November 10, 1995, Dr. Soler again prescribed anti-inflammatory medications and referred her to a rheumatologist for further treatment.
Plaintiff saw Dr. Walter Eversmeyer on March 27, 1996, after seeing two other doctors in order to get an Health Maintenance Organization (HMO) referral. Dr. Eversmeyer tested her for arthritis and instructed her to return in two weeks. When she returned, Dr. Eversmeyer’s associate Dr. Julio Bravo saw her. He continued plaintiff on pain medication and ordered physical therapy. Plaintiff obtained physical therapy in April, May and July of 1996. She was instructed to continue home exercises and prescribed anti-inflammatory medications and support stockings. These therapies improved her condition.
Plaintiff works in a grocery and her job often requires that she stand on her feet for several hours per day. In of September 1994, she complained to another doctor, Essam Elmorshidy, an orthopedist, that she had achiness in her legs. Defendant infers that this was a pre-existing condition that contributed to her pain. However, the evidence clearly shows that the pain suffered by plaintiff was caused by the abscess problem. She also saw her asthma doctor during that time. Although she did not report her leg pain to him, he was not treating her for her leg injury.
*658 Plaintiff was unable to work from November 7, 1994 until November 23, 1994. In addition, she was forced to keep the leg elevated for several days at various times during her treatments. These factors and the pain precluded her from doing her household chores when she was suffering the pain and when she was forced to bed rest and elevation of her leg. The pain, the forced inactivity and the financial stress during her treatment and recovery caused her to be upset, 1 ^anxious and irritable. In addition, the couple’s marital relationship suffered sexually and otherwise. Plaintiff has since gradually returned to normal and to her prior activities.
The injury suffered by plaintiff resulted in permanent scarring and discoloration in the injured area. The medical evidence relates all of her pain and suffering to the injury. Dr. Soler specifically testified that her pain is compatible with the type of trauma she sustained. She also suffers some residual pain from the injury. Although defendant argues that the gap in her treatment reduces the severity of the injury, the evidence shows that plaintiff did not seek medical treatment from January until July of 1995 because Dr. Soler told her that it would not be unusual for her to experience pain for up to one year, not because she was not suffering during that time. When the pain did not decrease within a reasonable time, she went back to Dr. Soler.
Based on these facts and considering the severity and duration of plaintiffs pain and suffering, we find that she is entitled to general damages of $20,000.
Defendant argues that plaintiff is not entitled to a separate award for the discoloration of her skin in the injured area and for the permanent visible scar. However, we disagree. These are com-pensable items of damage separate from pain and suffering. Thus, we award Sandra Ludwig $5,000 for those items of damage.
The parties stipulated to plaintiffs lost wages that she sustained for the two weeks following the accident and to her total medical expenses. Therefore, plaintiff is entitled to medical expenses in the amount of $4,926.80 ($4,908.52 medical expenses and $18.28 for prescriptions) and lost wages of $686.40.
17FinaIly, Walter Ludwig argues that he is entitled to an award for loss of consortium for the loss of his wife’s services and impairment of the couple’s intimate relations. We agree and find that Walter Ludwig is entitled to an award for loss of consortium of at least three to four weeks duration and award him $2,500 for that item of damage.
Accordingly, we hereby award to plaintiff, Sandra Ludwig, damages for pain and suffering in the amount of $20,000, damages for discoloration and permanent scarring in the amount of $5,000, medical expenses of $4,926.80 and lost wages of $686.40. We award to plaintiff, Walter Ludwig, damages for loss of consortium in the amount of $2,500. All of the damages are to be paid in conformity with the fault allocation made by the Louisiana Supreme Court in Ludwig v. Jefferson Performing Arts Society, 98-C-2431, (La.7/2/99), 737 So.2d 1267, with legal interest from date of judicial demand until paid. Costs of trial and appeal are to be paid by defendants.
JUDGMENT RENDERED.
DUFRESNE, J., concurs.

. The case was tried as a bench trial on February 5, 1997. At the close of the evidence, the trial court rendered judgment in favor of defendant and dismissed plaintiffs' suit with prejudice, finding that plaintiff's own negligence was the sole cause of her injuries. Plaintiffs appealed. The Court of Appeal affirmed the trial court’s judgment, with one dissent. Ludwig v. Jefferson Performing Arts Soc., 98-48 (La.App. 5th Cir. 6/30/98), 714 So.2d 1268.