883 So.2d 473 (2004)
Sara SIMMS and Sidney Simms, Plaintiffs-Appellees
v.
PROGRESSIVE INSURANCE COMPANY, Charles Williamson, and State of Louisiana through the Department of Transportation and Development, Defendants-Appellants.
No. 38,804-CA.
Court of Appeal of Louisiana, Second Circuit.
September 29, 2004.
Rehearing Denied October 21, 2004.
*478 Hulse & Wanek by John Hulse, IV, Cook, Yancey, King & Galloway by Kenneth Mascagni, Shreveport, for Appellant Progressive Ins. Co.
Cook, Yancey, King & Galloway by Kenneth Mascagni, Shreveport, for Appellant Charles Williamson.
Pettiette, Armand, Dunkelman, Woodley & Byrd by Robert Dunkelman, Shreveport, Counsel for Intervenor Appellant La. Home Builders Association Self-Insurers Fund.
Campbell, Campbell & Marvin by John C. Campbell, Minden, Unglesby, Koch & Reynolds by Lewis Unglesby, Baton Rouge, for Appellees Sara Simms and Sidney Simms.
Before BROWN, STEWART and GASKINS, JJ.
STEWART, J.
This is a suit for damages by Sara Simms, a pedestrian who was struck by a vehicle driven by Charles Williamson. The jury allocated fault between Simms and Williamson at forty-five percent and fifty-five percent, respectively, and awarded Simms general damages totaling $897,000, to be reduced by her percentage of fault. Simms' husband received an award for loss of consortium in the amount of $103,000. Williamson and his insurers appealed. For the following reasons, we affirm the trial court's judgment as to the finding and allocation of fault, and we amend the award of damages.

FACTS
On July 19, 2000, Sara Simms was struck by a vehicle as she crossed Louisiana Highway 531 to check her employer's mail. The vehicle was driven by Charles Williamson, who was accompanied by his wife and grandson and was on his way to the airport in Shreveport. Neither Simms nor Williamson saw one another until a moment before impact. Williamson, who was traveling south along the highway, swerved to the left and into the opposite lane of travel in a last second attempt to avoid hitting Simms. Unfortunately, the rear passenger side of his vehicle hit Simms, sending her flying into the air and crashing on the hot pavement of the highway. Williamson's vehicle then collided into an oncoming vehicle driven by Richard Jason Perot and flipped over in a ditch along the highway.
Simms' injuries included multiple breaks in her left forearm and right lower leg, facial lacerations and abrasions, and burn injuries to her forearm from the hot pavement. She was transported by ambulance *479 to a trauma center at Louisiana State University Medical Center ("LSUMC"), where she underwent surgery and remained hospitalized for approximately ten days. Her injuries required other surgical procedures and treatment over the months following the accident. Simms was not released to return to work until January 2002.
Simms sued Williamson and his liability insurer, Progressive Security Insurance Company ("Progressive"). A jury trial resulted in a verdict finding both Williamson and Simms negligent and allocating fifty-five percent of the fault to Williamson and forty-five percent of the fault to Simms. The jury awarded damages to Simms as follows:

 Past Medical Expenses $ 66,000
 Past Lost Wages $ 21,000
 Pain & SufferingPast and Future,
 Physical and Mental $435,000
 Permanent Scarring and Disfigurement $150,000
 Loss of Capacity for Enjoyment of Life $225,000

Additionally, the jury awarded Simms' husband, Sidney Simms, loss of consortium damages in the amount of $103,000. Judgment was rendered in accordance with the jury's verdict on September 8, 2003.
Williamson and Progressive filed a motion for a new trial. It was denied. This appeal followed. Columbia Casualty Company, Williamson's excess insurer, joined in the appeal. Appellants seek review of the finding of liability on the part of Williamson, the trial court's refusal to remove certain jurors for cause, the trial court's refusal to allow the depositions of Sara Simms and Richard Jason Perot into evidence, and the award of damages. Appellants also seek correction of the judgment to limit Progressive's exposure to its policy limits plus interest.

DISCUSSION

Jury Selection
Appellants argue that the trial court erred during voir dire in refusing to remove six individuals for cause due to bias. They contend that these errors deprived them of a fair trial.
As provided in La. C.C.P. art. 1765(2), a juror may be challenged for cause when he "has formed an opinion in the case or is not otherwise impartial, the cause of his bias being immaterial." A trial judge is vested with broad discretion in ruling on challenges for cause and will be reversed only when review of voir dire as a whole indicates an abuse of discretion. Riddle v. Bickford, 2000-2408 (La.5/15/01), 785 So.2d 795; Bannerman v. Bishop, 28,382 (La.App.2d Cir.7/12/96), 688 So.2d 570, writ denied, 96-2755 (La.1/10/97), 685 So.2d 146. Criminal jurisprudence on challenges for cause may be considered in civil cases. Bannermàn v. Bishop, supra.
In State v. Coates, 27,287 (La. App.2d.Cir.9/27/95), 661 So.2d 571, writ denied, 95-2613 (La.2/28/96), 668 So.2d 365, this court addressed the trial court's discretion in ruling on challenges for cause as follows:
In order to preserve the issue for appeal, the defendant must object to the ruling refusing to sustain a challenge for cause. If the defendant has exhausted all of his peremptory challenges ... no showing of prejudice is needed; he need only show the erroneous denial of a challenge for cause.
...
A refusal by a trial judge to excuse a prospective juror on the ground he is not impartial is not an abuse of discretion where, after further inquiry or instruction (frequently called "rehabilitation"), the potential juror has demonstrated a willingness and ability to decide the case impartially according to the law and the evidence. "[A] challenge for cause should be granted, *480 even when a prospective juror declares his ability to remain impartial, if the juror's responses as a whole reveal facts from which bias, prejudice, or inability to render judgment according to law may be reasonably inferred." (Citations omitted.)
See also State v. Johnson, 36,014 (La. App.2d Cir.6/12/02), 821 So.2d 652.
Appellants argue that four jurors, who were excused on peremptory challenges, should have been excused for cause due to bias. These four potential jurors were Amy Hawkins, Jtasha White, Marie Batton, and Emmitt Bankston.
During voir dire, Amy Hawkins described herself as "a very sympathetic person" and stated it would be "hard" for her to put sympathy aside. When questioned about being able to put sympathy aside as a juror, Jtasha White answered, "I'll try. I'm not going to say that I can completely, but I can try." Defense counsel then questioned the jury panel, which included both Hawkins and White, about whether they could enforce the law as instructed by the court. The entire panel answered affirmatively. Plaintiffs' counsel also received an affirmative response from the panel in answer to whether they could put aside sympathy and rule against Simms if she failed to prove her case. In challenging for cause, defense counsel even admitted that the potential jurors answered "yes" when asked if they could rule against Simms.
We find no abuse of discretion in the trial court's denial of challenges for cause as to Hawkins and White. The record shows that while both Hawkins and White expressed concern about their ability to disregard sympathetic feelings, they also indicated that they could comply with the law as instructed by the court and rule against Simms. This is what our judicial system requires of jurors.
In a similar vein, Marie Batton also admitted that she did not know whether she could make a decision divorced of sympathy. She explained that she had "very soft feelings." However, Batton also indicated that she could apply the law as instructed by the court and deny recovery to Simms if she was at fault. The trial judge read instructions pertaining to sympathy and asked Batton whether she could apply the law as a fair and impartial juror. Batton replied that she could. Considering Batton's answers, we find no error in the trial court's refusal to dismiss Batton for cause.
Emmitt Bankston, who was involved in a prior incident, underwent thorough questioning by counsel for both sides and the trial court to determine whether he could serve as a fair and impartial juror. As did the three prior jurors, Bankston expressed some reservations about his ability to put aside all sympathy in deciding the case. However, Bankston was rehabilitated. He expressed to the court that he could judge the matter on the facts presented and follow the court's directions. The trial judge decided that Bankston would not be excused for cause, and we find no abuse of discretion in this decision.
Neither Bankston nor the other three jurors expressed responses which showed bias, prejudice, or the inability to render an impartial decision. Though they expressed the understandable difficulty of being able to totally divorce oneself from the natural inclinations toward sympathy, their answers revealed their willingness to decide the case based on the facts presented and law as instructed by the court. There was no abuse of the trial court's broad discretion in denying the challenges for cause.
*481 Appellants also argue that two other jurors, Deborah Pope and Kelli Philips, should have been excused for cause. Both served on the jury. Appellants contend that Pope should have been excused for cause, as she became visibly upset during questioning and revealed that she had been involved in a prior automobile accident with a pedestrian when she was sixteen. However, in response to questioning, Pope stated that she would be able to be fair. She told the trial judge that the trial would not be too emotional for her. Our review of Pope's voir dire reveals no abuse of discretion on the part of the trial court in denying the challenge for cause. Neither bias, prejudice, nor an inability to render judgment according to law was shown on the part of Pope.
Appellants now assert that Kelli Philips should have been excused for cause due to the fact that she knew Richard Jason Perot, a witness to the accident. However, the record reveals no objection or challenge to Philips by the defense during voir dire. Philips explained that she had met Perot years before, that he was an acquaintance of her husband, and that he had last been to her home two years ago. There appeared to be no close personal acquaintance between Philips and Perot. There was no indication that knowing Perot would influence her decision-making in any way. When the trial judge indicated that he was inclined to keep Philips on the jury, defense counsel answered, "We acquiesce." The record does not support appellants' claim that Philips should have been dismissed for cause.

Introduction of Depositions
Appellants contend that the trial court erred in refusing to allow into evidence the depositions of Sara Simms and Jason Perot. The use of depositions is governed by La. C.C.P. art. 1450, which states in relevant part as follows:
A. At the trial ... any part or all of a deposition, so far as admissible under the Louisiana Code of Evidence applied as though the witnesses were then present and testifying, may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof, in accordance with any of the following provisions:
(1) Any deposition may be used by any party for the purpose of contradicting or impeaching the testimony of deponent as a witness.
(2) The deposition of a party ... may be used by an adverse party for any purpose.
This court has typically construed this provision to allow the trial court discretion in admitting or refusing to admit into evidence the discovery deposition of a party, particularly when the deposition is repetitious of matters in the record. Orea v. Scallan, 32,622 (La.App.2d Cir.1/26/2000), 750 So.2d 483; Robledo v. Orr Motors of Louisiana, Inc., 582 So.2d 892 (La.App. 2d Cir.1991); Harrison v. State, Dept. of Highways, 375 So.2d 169 (La.App. 2d Cir. 1979).
Defense counsel sought to introduce Simms' deposition for impeachment purposes on the grounds that there were inconsistencies between her trial testimony and deposition testimony as to the facts of the accident. Appellants argue that Simms' failure to recall certain facts from the moments leading up to the accident is contrary to her deposition, calls her credibility into question, and is relevant to the determination of fault. Appellants also argue that the trial court's failure to allow the deposition into evidence is legal error which requires this court to conduct a de novo review of the record. We disagree.
*482 The record shows that Simms testified as to her recollection of the accident during direct examination and again on cross examination. Upon further questioning during cross examination, defense counsel impeached Simms with regard to particular facts which she claimed not to recall, such as where the van she was walking beside before she entered Highway 531 stopped, how long the van stopped before turning onto the highway, how long she waited before entering the highway after the van, and what she saw as she attempted to cross the highway. Defense counsel properly called Simms' attention to statements in her deposition perceived to be inconsistent with her trial testimony. Simms did not deny making such statements, nor did she deny the truthfulness of her deposition testimony. Rather, she testified that she could not recall details of the accident and that her memory was not refreshed by references to her deposition. At the close of Simms' testimony, defense counsel did not seek to introduce Simms' deposition or the parts used for impeachment. Rather, defense counsel sought to introduce the entire deposition at the close of trial. Noting that impeachment was well done, the trial judge refused to allow introduction of the entire deposition.
Considering this circuit's interpretation of La. C.C.P. art. 1450, we find that whether to allow introduction of the deposition was a matter within the trial court's discretion. We have reviewed both Simms' testimony and the proffered deposition, and we find no abuse of discretion in the trial court's ruling to deny introduction of Simms' deposition. The thorough cross examination and impeachment brought to the jury's attention any inconsistencies between Simms' deposition and trial testimony regarding the moments leading up to the accident. Introduction of the entire deposition would have been repetitive of matters already on the record.
Appellants also seek review of the trial court's refusal to allow introduction of Perot's deposition into evidence for the purpose of undermining the testimony of Simms' expert witness, A.J. McPhate. The defense asserted that introduction of Perot's deposition was necessary to make clear to the jury that McPhate disregarded portions of Perot's eyewitness account in giving his expert opinion at trial. However, this fact was made clear during McPhate's testimony. McPhate admitted that he disregarded Perot's placement of the van on the highway, Perot's claim that Simms and the van entered the highway at the same time, and Perot's contention that the van obstructed Williamson's view of Simms. McPhate explained that Perot was too far away and could have been mistaken in his positioning of the parties on the highway ahead of him.
The jury had the benefit of McPhate's testimony, which included extensive cross-examination about what part of Perot's eyewitness account he disregarded in forming his opinion. The jury also heard Perot's trial testimony. As such, all of the information relevant to an assessment of McPhate's opinion was in the record. Introduction of Perot's deposition would have been repetitive. We find no abuse of discretion by the trial court in disallowing introduction of Perot's testimony.

Jury Instructions
Appellants contend that trier of fact erred in its allocation of fault by failing to apply the "sudden emergency doctrine." They further contend that the trial court did not properly instruct the jury as to the applicable law.
When presented with allegations of improper jury charges, the reviewing court must assess the alleged "impropriety *483 in light of the entire jury charge to determine if they adequately provide the correct principles of law as applied to the issues framed in the pleadings and evidence and whether they adequately guided the jury to the extent that it was prevented from dispensing justice." Nicholas v. Allstate Ins. Co., 99-2522 (La.8/31/2000), 765 So.2d 1017. Adequate jury instructions are those that fairly and reasonably point to the issues and provide the correct principles of law for the jury to apply. Kessler v. Southmark Corporation, 25,941 (La.App.2d Cir.9/21/94), 643 So.2d 345.
An appellate court is charged to exercise great restraint before reversing a jury verdict because of erroneous jury instructions, as trial courts have broad discretion in formulating jury instructions. Nicholas v. Allstate Ins. Co., supra. The trial court's judgment will not be reversed so long as the charge correctly states the substance of the law. Id. Where the jury has been erroneously instructed, an appellate court may conduct a de novo review of the facts from the record. Id.
The sudden emergency doctrine provides that a person "who finds himself in a position of imminent peril, without sufficient time to consider and weigh all the circumstances or the best means to adopt to avoid an impending danger, is not guilty of negligence if he fails to adopt what subsequently and upon reflection may appear to be the better method, unless the emergency is brought about by his own negligence...." Clark v. Natt, 32,548 (La.App.2d Cir.12/08/99), 748 So.2d 584, writ denied, 00-0084 (La.3/17/00), 756 So.2d 1142. The defense argued that Williamson's view of Simms crossing the highway was blocked by a van, and her unexpected appearance in his path constituted a sudden emergency for which he was not at fault.
Review of the defense's proposed jury instructions shows that they did not request a specific instruction on the sudden emergency doctrine. Therefore, we find no basis for the complaint that the trial court did not instruct the jury as to that doctrine of law.
Nevertheless, appellants argue that they requested the equivalent of sudden emergency charges in their proposed instructions. The defense sought to have the jury instructed, through a number of proposed variations, that a pedestrian may not leave a position of safety to enter the path of a vehicle which is so close that it cannot yield; that motorists are not insurers of a pedestrian's safety; that a motorist has no duty to guard against unexpected obstacles which he has no reason to anticipate and are difficult to discover; and that a motorist has no duty to anticipate a pedestrian where there is no crosswalk. The defense objected to the trial court's omission of some of the specific proposed charges.
The trial court advised the jury as to the law of negligence, the respective duties of a pedestrian and driver as set forth in La. R.S. 32:213 and La. R.S. 32:214, and the principles of comparative fault, including the Watson factors. The court instructed the jury that pedestrians must exercise reasonable care when leaving a place of safety and must maintain a proper lookout. The instructions also stated that a motorist has a duty to see what an ordinarily prudent driver should have seen and to avoid striking pedestrians in the road. The trial court explained that a motorist "who observes, or who with the exercise of reasonable care should have observed, a pedestrian... has a duty to avoid injuring the pedestrian if he ... can reasonable [sic] do so."
*484 Our review of the trial court's instructions to the jury convinces us that the court properly advised the jury as to the substance of the law applicable in this matter. The charges were sufficient to inform the jury as to the issues presented and the correct principles of law, including the duties of the respective parties to the accident and the law applicable to determining negligence and assessing fault. We cannot conclude that the trial court's failure to include the sudden emergency doctrine or the specific charges proposed by the defendants misled the jury or prevented the jury from doing justice.
Because we find that the jury was adequately informed as to the applicable law, de novo review is not warranted. We will now review the jury's allocation of fault under the manifest error standard of review. See Stobart v. State, Through DOTD, 92-C-1328, 617 So.2d 880 (La. 1993) and Rosell v. ESCO, 549 So.2d 840 (La.1989) for the applicable, well-known law governing the manifest error standard of review.
As told to the jury, the respective duties of Williamson and Simms as motorist and pedestrian are set forth in La. R.S. 32:213 and 32:214. The pedestrian's duty is provided in La. R.S. 32:213, in relevant part, as follows:
A. Every pedestrian crossing a roadway at any point other than within a marked cross walk or within an unmarked cross walk at an intersection shall yield the right of way to all vehicles upon the roadway.
The motorist's duty is provided in La. R.S. 32:214, which states:
Notwithstanding the foregoing provisions of this Part, every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway and shall give warning by sounding the horn when necessary and shall exercise proper precaution upon observing any child or any confused or incapacitated person upon a highway.
Motorists are charged with a duty to see what an ordinarily prudent driver should have seen under the circumstances, and to avoid striking pedestrians in the roadway ahead. Hanna v. Roussel, 35,346 (La. App.2d Cir.12/5/01), 803 So.2d 261; Jackson v. Scott Truck & Tractor, Inc., 31,933 (La.App.2d Cir.5/5/99), 736 So.2d 987. However, motorists are not the insurers of pedestrians' safety. Jackson v. Scott Truck & Tractor, Inc., supra.
The fact that an accident occurs does not create a presumption of negligence on the part of either party. Id. Even though the motorist commands a greater instrumentality of harm, the pedestrian must still prove that the motorist was negligent in order to recover. Bennett v. State, Through DOTD, 503 So.2d 1022 (La.App. 2d Cir.1987), writs denied, 505 So.2d 58 (La.1987). A determination of negligence in a case involving a pedestrian and a motorist rests upon the particular facts of each case and is governed by principles of comparative fault. Jackson v. Scott Truck & Tractor, Inc., supra.
From our review of the record, we find no error in the jury's allocation of fault between Williamson and Simms. The accident occurred in daylight under ordinary driving conditions. As shown by photographs of the accident scene and as described by Tobey Whaley, the driver of the van and the person who spoke to Simms just prior to the accident, the accident occurred in a "fairly open area." Simms was struck by Williamson's vehicle as she crossed the highway to check a mailbox. Her testimony reveals no reason for her failure to see Williamson's oncoming vehicle and yield the right of way to him. Simms testified that she looked to the left *485 and right of the highway and saw nothing to prevent her from crossing the road. Even once she got to the center line of the highway, she still did not see anything to prevent her from crossing the road. It is evident that Simms failed to see what should have been seen and that she entered the highway without yielding the right of way to oncoming vehicles. Clearly, Simms was at fault.
Williamson admitted that he had a clear sight of the road ahead. However, defense counsel posited the theory that Williamson's view of Simms was blocked by the van driven by Tobey Whaley. Whaley had been driving the van alongside Simms on Petrochem Drive and then turned onto the highway around the time that Simms began to cross the highway to reach the mailbox. The defense argued that the van entered the highway at the same time as Simms, blocking Williamson's view of Simms. This was supported by expert analysis entered into evidence and the testimony of Perot, who was traveling north on Highway 531, witnessed the accident, and was struck by Williamson's vehicle. Perot testified that he saw the van on Petrochem Drive and Simms next to it. The van turned onto the highway. Simms looked, walked out into the highway behind the van, and proceeded west across the highway without stopping. Cross examination established that Perot was about 1,000 feet away when he saw the van and Simms enter the highway.
The jury obviously rejected the defense's theory. The jury's decision was reasonable in light of Williamson's own testimony during which he admitted that he had a clear sight shot of the road ahead and that nothing prevented him from seeing Simms in the roadway. Although Williamson testified that the only explanation he could come up with for not seeing Simms was that something must have blocked his view, he could not recall anything that actually blocked his view. In fact, Williamson testified that he did not even see the van. This testimony belies the defense's theory of the case. The jury could have reasonably concluded that Williamson's view was not blocked by a van that he did not even recall seeing. In addition, the jury could have reasonably concluded that Williamson simply failed to exercise due care to see what an ordinarily prudent driver should have seen.
Having reviewed the testimony and evidence presented at trial, we find no manifest error in the jury's finding of negligence by both parties and the allocation of fault between them. The allocation of fifty-five percent of the fault to Williamson and forty-five percent of the fault to Simms cannot be said to be clearly wrong or manifestly erroneous.

Damages
Appellants seek a reduction of the awards for general damages and loss of consortium. They argue that the award of general damages is excessive and is reflective of sympathy for Simms rather than responsive to the evidence presented.
General damages are those that may not be fixed with pecuniary exactitude. Mental and physical pain and suffering, inconvenience, loss of physical enjoyment, and other losses of lifestyle are damages that are not subject to exact measurement in monetary terms. Orea v. Scallan, supra.
Because the trier of fact is given great and even vast discretion in setting general damage awards, an appellate court should rarely disturb an award of general damages. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). The initial inquiry in appellate review of general damages is *486 "whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the `much discretion' of the trier of fact." Youn, 623 So.2d at 1260. Thus, to determine whether the trier of fact abused its discretion in awarding damages, we must look first to the individual circumstances of the case.
Only when the award is in either direction beyond that which a reasonable trier of fact could have assessed for the effects of the particular injury on the particular plaintiff under the particular circumstances should the appellate court reduce or increase the award. Youn, 623 So.2d at 1261. The award may then be raised or lowered only to the highest or lowest point reasonably within the discretion of the trier of fact. Orea v. Scallan, supra. An appellate court should view the evidence in the light most favorable to the plaintiff in deciding whether an award is excessive. O'Brien v. Remington Arms Co., 601 So.2d 330 (La.App. 2d Cir.1992), writ denied, 604 So.2d 1003 (La.1992). If an articulated factual analysis shows an abuse of discretion by the trier of fact, then the appellate court may look to prior awards to determine the highest or lowest point within the trier of fact's discretion. Youn, 623 So.2d at 1260.
The record establishes that the impact of Williamson's vehicle threw Simms into the air and onto the hot pavement where she remained for some time until the ambulance arrived to transport her to LSUMC for treatment. She sustained burn injuries to her left forearm from the hot asphalt. She also sustained facial lacerations and abrasions, two broken bones in her left forearm, and severe brakes of both the tibia and fibula from her knee to ankle along the lower right leg. She remained hospitalized for ten days and underwent surgery to repair her broken bones.
Fletcher S. Sutton, Jr., an orthopaedic surgeon who treated Simms, testified at trial. Dr. Sutton explained that Simms underwent a closed reduction of her left leg to align the bones and place an external fixation device attached by multiple pins along her leg. Simms also had an open reduction procedure to place a metal plate in her forearm and a closed reduction procedure on a bone near her wrist where pins were placed for stabilization. Following these procedures, Simms was bedridden and could do nothing for herself. She required the constant assistance of her family and friends.
After her discharge from the hospital, Simms underwent an additional painful procedure to adjust the device on her leg. Dr. Sutton testified that the external fixator device was finally removed from Simms' leg after eight weeks, at which time a cast was placed from her groin to her toe. Once the cast was in place, she was encouraged to begin putting weight on her leg to stimulate healing. However, the leg required additional procedures due to angulation of the bone and slow healing of one of the breaks. The break was opened so that scar tissue could be scraped from between the broken bone. A bone graft was done with bone taken from her pelvis to pack around the break, and a metal rod was inserted down the middle of the bone from knee to ankle.
Dr. Sutton testified that Simms could walk short distances on level surfaces with the assistance of a walker after six months. Additionally, her arm was fully functional after six months. One year elapsed from the accident until she was able to ambulate without support. Simms' recovery required extensive physical therapy. Dr. Sutton felt that everything turned out "pretty good" for Simms. He put no limitations *487 on her and advised her that she can do anything she wants to do. However, he did mention that Simms may have a little more risk of fracturing her left arm in the future due to a weak area created by the plate in her arm. Simms was involved in a subsequent accident in which she fractured that same arm, after which Dr. Sutton restricted her lifting over 10 to 15 pounds. Dr. Sutton released Simms to return to work in January 2002, but the record does not make clear whether her involvement in the second accident delayed her return to work.
After the cast was removed from her arm, Simms underwent treatment for the burn injury. She described the injury as looking like "raw hamburger meat" and being infected. The burned area had to be cleaned and treated with ointment at least twice a day. Dr. Kevin Sittig treated Simms beginning in July 2001 with compression therapy for the burn scars on her arm. This involved wearing a tight nylon sleeve over the arm to compress and remodel the scars. Dr. Sittig testified that Simms reached the maximum level of recovery in the burn area. She has a mature scar with soft and pliable skin texture. He also testified that the area is now more sensitive to ultraviolet light, so Simms will need to wear sunblock when outdoors. The scarred area may also take longer to heal if subjected to future trauma. The record also indicates that Simms has some scarring along her leg and hip due to the surgeries and fixator device.
Simms testified as to the great pain, suffering, and difficulties she endured while recovering from her injuries. She testified that she was motivated to get better in time for her daughter's wedding in May 2001, at which she was able to walk down the aisle with the assistance of her son. Simms attended physical therapy until June 2001. During the summer, she was able to walk short distances outdoors, go to the grocery store, and attend church. She also visited Gulf Shores; however, she explained that pain and discomfort from sitting for long periods required stops every two to three hours during the drive so that she could get out and walk a bit. Simms explained that her gait is now different and that she limps somewhat. She also claims that her leg has shortened as a result of the accident and that she can no longer wear the same type of shoes as before the accident. While working, she can sit up to one hour, but she is stiff after doing so. She also tires easily, but she is able to walk up to forty-five minutes with her friends. Simms complaints were corroborated by testimony from her husband, her daughter, and a friend.
The jury awarded Simms general damages totaling $810,000. Of this total amount, $435,000 was awarded for pain and suffering, $225,000 was awarded for loss of enjoyment of life, and $150,000 was awarded for permanent scarring and disfigurement. Upon considering the individual circumstances of this case in the light most favorable to the plaintiff, we are compelled to conclude that the jury abused its great discretion in awarding excessive general damages. We recognize that Simms' injuries were serious. She underwent a difficult recovery period of more than a year involving multiple painful procedures and treatment for her broken bones and burn injury. Clearly, she endured significant pain and suffering during that time. She was helpless for more than two months and dependent upon the help of others for all of her needs. However, Simms' injuries were neither life-threatening nor permanently life-altering. As indicated by Dr. Sutton's testimony, Simms made a good recovery and was released to do as much as she can. Simms is functional and able to work. Moreover, she is able to enjoy life with her family and friends, *488 though at a bit slower pace than before the accident.
A survey of similar cases involving multiple injuries convinces us that though the award for pain and suffering is in the upper range of what a reasonable trier of fact could award, the amount is not so high as to constitute an abuse of the jury's vast discretion. See Couvillion v. Shelter Mutual Ins. Co., 95-1186 (La.App. 1st Cir.4/4/96), 672 So.2d 277, wherein $245,000 awarded plaintiff with fractured tibia and fibula, fractured ribs, arm injury, and closed head injury; Gauthier v. Kansas City Southern Railroad Co., 96-529 (La.App. 3d Cir.11/6/96), 682 So.2d 993, writ denied, 96-2918 (La.1/24/97), 686 So.2d 867 and 96-2932 (La.1/24/97), 686 So.2d 868, wherein $425,000 in general damages awarded for fractures of femurs, knee, humerus, and tooth along with surgeries and other injuries; Cornish v. State, Through DOTD, 93-0194 (La.App. 1st Cir.12/1/94), 647 So.2d 1170, writ denied, 95-0547 (La.5/5/95), 654 So.2d 324, wherein plaintiff awarded $425,000 general damages for leg and hip fractures, facial lacerations, and multiple surgical procedures; and Lousteau v. K-Mart Corp., 03-1182 (La.App. 5th Cir.3/30/04), 871 So.2d 618, writ denied, XXXX-XXXX (La.6/25/04), 876 So.2d 835, wherein $450,000 in general damages awarded for comminuted and spiral femur fracture and knee problems.
While we do not find an abuse of discretion as to the award for pain and suffering, we do find that the jury abused its vast discretion in awarding $225,000 for loss of enjoyment of life. Loss of enjoyment of life is a compensatory element of damages recoverable upon proof that the injured party's lifestyle was detrimentally altered or that the injured party was forced to give up activities because of his injury. Day v. Ouachita Parish School Board, 35,831 (La.App.2d Cir.8/8/02), 823 So.2d 1039, writ denied, 2002-2532 (La.12/19/02), 833 So.2d 343.
In Day, supra, a high school freshman was awarded $50,000 for loss of enjoyment of life after a back injury rendered him unable to play high school football and baseball, adversely affected his school performance, and resulted in recurring pain that will limit his daily activities. In Horton v. McCrary, 620 So.2d 918 (La.App. 3d Cir.1993), aff'd in part, rev'd in part, 635 So.2d 199 (La.1994), the plaintiff was awarded $50,000 for loss of enjoyment of life due to a left femur fracture which caused him to lose a potential professional baseball career. Similarly, an award of $50,000 for loss of enjoyment of life was affirmed in Levy v. Bayou Indus. Maintenance Services, Inc., XXXX-XXXX (La.App. 1st Cir.9/26/03), 855 So.2d 968, for a plaintiff who lost independence and the ability to maintain the same high level of activity enjoyed prior to her injury. An award of $45,000 was affirmed in Matos v. Clarendon Nat. Ins. Co., 2000-2814 (La.App. 1st Cir.2/15/02), 808 So.2d 841, for a plaintiff in the prime of his life whose disabling back injuries deprived him of enjoying activities with his young child and foreclosed his participation in outdoors recreational activities.
Higher awards have been made in cases where the plaintiffs have sustained severe disabling conditions or injuries that impacted their ability to return to work. See Bourgeois v. McDonald, 622 So.2d 684 (La.App. 4th Cir.1993), writ denied, 629 So.2d 1177 (La.1993); Rivere v. Union Pacific Railroad Co., 93-1132 (La.App. 1st Cir.10/7/94), 647 So.2d 1140, writ denied, 95-0292 (La.3/24/95), 651 So.2d 295; and Cortez v. Zurich Ins. Co., 98-2059 (La. App. 1st Cir.12/28/99), 752 So.2d 957.
The record establishes that Simms' recovery restricted her lifestyle for at least a year. However, the record also establishes *489 minimal long-term impact on her ability to enjoy life. Although she complains of some recurring pain, particularly when sitting or walking for long periods, she has been able to resume her regular life activities. We find that the highest award reasonably within the trier of fact's discretion for Simms' loss of enjoyment of life is fifty-thousand dollars ($50,000).
We also find that the award of $150,000 for scarring and disfigurement was abusively high. In Morris v. Flores, 36,932 (La.App.2d Cir.3/7/03), 840 So.2d 1257, the plaintiff was awarded $25,000 for facial scarring along with other injuries. Total general damages of $35,000 were awarded in De Los Reyes v. USAA Cas. Ins. Co., 28,491 (La.App.2d Cir.6/26/96), 677 So.2d 668, to a plaintiff with significant scars on her leg and foot, lacerations, lumbar strain, and a neck injury. On the lower end, an award of $12,000 for bad scarring and disfigurement was granted to a plane crash victim in Marien v. Gen. Ins. Co. of America, 2002-545 (La.App.3d Cir.12/11/02), 836 So.2d 239, writ not considered, XXXX-XXXX (La.5/9/03), 843 So.2d 384, and writ denied, XXXX-XXXX (La.5/9/03), 843 So.2d 396 and XXXX-XXXX (La.5/9/03), 843 So.2d 397. A lower award of $5,000 for permanent scarring and discoloration from a leg injury was granted in Ludwig v. Jefferson Performing Arts Society, 98-48 (La.App. 5th Cir.1/25/00), 802 So.2d 655. Based on our consideration of the record and review of cases, we find that the highest award reasonably within the trier of fact's discretion for the scarring of Simms' forearm, hip, and leg to be $25,000.
Finally, we turn to the award of $103,000 to Sidney Simms for loss of consortium. An award of loss of consortium is made to compensate the claimant for loss of love and affection, loss of society and companionship, impairment of sexual relations, loss of performance of material services, loss of financial support, loss of aid and assistance, and loss of fidelity. Etheredge v. St. Paul Mercury Ins. Co., 35,832 (La.App.2d Cir.4/3/02), 814 So.2d 119. Sidney Simms' testified about the care he gave his wife during her recuperation and recovery from her injuries. During the two months she was bedridden and during her long recovery, Mr. Simms helped to care for his wife. He missed fifteen days of work. Once he began working, he returned home to take care of the chores that his wife had ordinarily done. He testified that their life slowed down considerably after the accident. Initially, Sara could not leave the house because of her injuries, and she was later embarrassed about her arm and leg. Mr. Simms also testified that their romantic life considerably changed. Finally, he claimed that their plans to travel after retirement are on hold, since Sara can only ride in a vehicle for short periods of time.
Clearly, Mr. Simms's testimony shows some basis for an award for loss of consortium. During Sara's recovery, he was without the services, assistance, and personal companionship she normally provided. However, there was no indication of marital strain due to Sara's condition. The testimony simply does not establish a reasonable basis for an award of $103,000. Such awards are generally made in instances where there is severe marital strain due to the serious, life-changing, or disabling nature of the injuries suffered. See Laing v. American Honda Motor Co., Inc., 628 So.2d 196 (La.App. 2d Cir.1993), writ denied, 94-0375 (La.3/25/94), 635 So.2d 239; Whiddon v. Hutchinson, 94-2000 (La.App. 1st Cir.2/23/96), 668 So.2d 1368, writ denied, 96-0731 and 96-0775 (La.5/10/96), 672 So.2d 923; and Castay v. ADM Growmark River Systems, Inc., 00-1489 (La.App. 5th Cir.3/14/01), 785 So.2d *490 47, writ denied, XXXX-XXXX (La.6/1/01), 793 So.2d 196 and XXXX-XXXX (La.6/1/01), 793 So.2d 199.
Based on this record, we find the highest award reasonably within the jury's discretion to be $35,000 for the loss of consortium suffered by Mr. Simms. See Beckham v. St. Paul Fire & Marine Ins., 614 So.2d 760 (La.App. 2d Cir.1993), awarding $35,000 to husband who cleaned burn wounds and did chores for wife recovering from burns and surgery; and Sevario v. State, DOTD, 98-2250 (La.App. 1st Cir.11/10/99), 752 So.2d 221, writ denied, 99-3457 (La.4/7/00), 759 So.2d 760, and writ not considered, 99-3638 (La.4/7/00), 759 So.2d 81 and XXXX-XXXX (La.4/7/00), 759 So.2d 82, awarding $35,000 to husband whose wife underwent multiple surgeries for pelvic, femur, and foot fractures.

Correction of Judgment
Finally, appellants seek to have the judgment corrected to reflect the policy limits under Progressive's policy, which provided liability coverage to Williamson in the amount of $250,000. We decline to amend the judgment as requested. The record shows that plaintiffs' counsel approved the judgment. No correction was sought in the trial court. Accordingly, we find no basis for correction by this court.

CONCLUSION
For the reasons stated, we affirm the judgment of the trial court in accordance with the jury's verdict apportioning 55% of the fault to Williamson and 45% of the fault to Simms. However, the award of damages is amended to reflect an award for loss of enjoyment of life in the amount of $50,000, and an award for permanent scarring and disfigurement in the amount of $25,000. Accordingly, Simms is awarded total general damages in the amount of $510,000, subject to reduction by her percentage of fault. The judgment is also amended to reflect Sidney Simms' award for loss of consortium in the amount of $35,000, subject to reduction by Sara Simms' percentage of fault. Costs are assessed between the parties in accordance with their percentage of fault.
AMENDED IN PART AND AFFIRMED, AS AMENDED.
APPLICATION FOR REHEARING
Before BROWN, STEWART, GASKINS, PEATROSS, and LOLLEY, JJ.
Rehearing denied.