917 So.2d 1273 (2005)
Kenneth G. NESTOR, et ux., Plaintiffs-Appellees,
v.
LOUISIANA STATE UNIVERSITY HEALTH SCIENCES CENTER IN SHREVEPORT, Defendant-Appellant.
No. 40,378-CA.
Court of Appeal of Louisiana, Second Circuit.
December 30, 2005.
*1276 Claude W. Bookter, Jr., Special Asst. Attorney General, for Appellant.
Nelson & Hammons by John L. Hammons, Cornell Flournoy, Shreveport, for Appellees.
Before GASKINS, MOORE and LOLLEY, JJ.
LOLLEY, J.
This appeal arises from the First Judicial District Court for the Parish of Caddo, State of Louisiana. Louisiana State University Health Sciences Center in Shreveport ("LSUHSC") appeals a jury verdict rendered in favor of Kenneth G. Nestor and Luvada Nestor for the sum of $100,000.00 in general damages for past mental and future mental anguish with interest and costs. The Nestors answered the appeal asking for an increase in damages. For the following reasons, the judgment is affirmed.

FACTS
Kenneth Nestor ("Nestor") is a retired U.S. Navy veteran who worked as a certified automotive technician. He suffered from back trouble over an extended period of time and was referred to the Overton Brooks Veterans Administration Hospital ("VA") in Shreveport, Louisiana for evaluation in the fall of 1997. An MRI was performed on him which showed a protrusion of discs in his lumbar spine. Nestor *1277 was evaluated a month later and another MRI was performed. The report of the evaluation indicated a posterior midline left paramedial disc protrusion at L1-L2; disc bulging at L2-L3 and L3-L4; and L3-L4 posterior midline disc protrusion. The report also indicated that possible surgery and risks were discussed and that there was a plan to do a discectomy at L1-L2. Nestor consulted with Dr. Sherry Apple, a neurosurgical resident at LSUHSC, who also performed surgery and rendered treatment at the VA.
As a prerequisite to undergoing surgery, Nestor signed an operative consent form on January 21, 1998, which originally indicated that the surgery would be at level L1-L2. The consent form was changed by an unknown person at some point, and the level L1-L2 shown on the form was scratched out. The words "lumbar" and "possible laminectomy" were added to the consent form; however, no one initialed or dated those changes. The consent form was signed by both Nestor and Dr. Apple, who was scheduled to perform the surgery. On January 27, 1998, Dr. Apple performed a hemilaminotomy and discectomy on Nestor at level L5-S1, which is the subject of this medical malpractice action. Nestor was sent home the same day the procedure was performed with instructions given to his wife to watch him for headaches, but with no instructions on how to watch for a spinal leak. There is no narrative operative report by Dr. Apple in the record to describe the surgery performed.
After several months of recovery, Nestor decided to try testing his back by doing some repairs on his mother-in-law's car. It was during this "testing of his back" that Nestor's back failed. Although he did not immediately seek medical treatment, he ultimately returned to the VA for consultation with Dr. Richard Polin. Dr. Polin recommended that Nestor undergo surgery which was performed in February 1999. This subsequent surgery was performed at level L5-S1 which is where Dr. Apple originally operated on Nestor. It was following this second surgery that Nestor allegedly learned that the previous surgery performed by Dr. Apple was done on level L5-S1, and, not at level L1-L2 as originally indicated on the consent form. Dr. Polin further informed Nestor that during this surgical procedure he discovered a laceration in the L5-S1 nerve root that had been sutured during the previous surgery performed by Dr. Apple.
Subsequent to learning of these events, the Nestors instituted a medical malpractice claim on January 12, 2000, naming as defendants, LSUHSC and Dr. Apple. LSUHSC acknowledged by letter dated January 21, 2000, that Dr. Apple was a qualified healthcare provider under the terms of the Malpractice Liability for State Services Act. Based upon allegations of a breach of the standard of care, the Nestors filed claims with both the state medical review panel and the United States under the Federal Tort Claims Act. On May 18, 2001, the Commissioner of Administration for the State of Louisiana confirmed that Dr. Apple was a qualified healthcare provider under the terms of the Malpractice Liability for State Services Act. Later that same month, the VA denied any negligence on behalf of Dr. Apple. Subsequent to this, the Nestors discontinued pursuing a claim against the United States. In May 2002, the Nestors submitted their claim to the medical review panel; however, before it convened, Dr. Apple died in boating accident. The state medical review panel, which consisted of three neurosurgeons, rendered a unanimous opinion on June 26, 2003. The panel found that the evidence supported the conclusion that Dr. Apple failed to comply with the appropriate standard of care as charged in the complaint and that the alleged conduct *1278 complained of was a factor or cause of some resultant damage to Nestor.
Based upon the opinion of the medical review panel, the Nestors filed this action seeking damages for the alleged breaches of the standard of care by Dr. Apple. On April 13, 2004, the state answered the Nestors' petition admitting that Dr. Apple was in the course and scope of her employment with LSUHSC at the time the breaches of the standard of care occurred. The matter was scheduled for trial on December 6, 2004. The Nestors filed a Motion for Summary Judgment in July 2004 on the breaches of the standard of care by Dr. Apple. During this time period, counsel for LSUHSC obtained a copy of an assignment agreement under Title IV of the Intergovernmental Personnel Act of 1970 (5 U.S.C. §§ 3371-3375) which indicated that Dr. Apple was assigned from LSUHSC to the VA on an interim, part-time basis. Based upon this information, LSUHSC filed a motion to amend its answer and file a third party demand on August 13, 2004. Following oral arguments on these motions, the trial court denied LSUHSC's motion to amend, but granted the Nestors' motion for summary judgment solely on the issue of causation. Subsequently, LSUHSC filed an application to this court for supervisory writs on the denial of its motion to amend its answer and file a third party demand. This writ application was denied.
Shortly before the scheduled trial of the matter, LSUHSC filed an Exception of Prescription and an Exception of Lack of Subject Matter Jurisdiction. Both of these exceptions were denied by the trial court. LSUHSC then requested a stay order while it sought supervisory writs which request was denied by the trial court. It then applied for supervisory writs concerning the denial of the exception of lack of subject matter jurisdiction and stay order. The writ application was granted in part and denied in part, and the matter was remanded to the trial court for a contradictory hearing on whether LSUHSC's judicial confession should be withdrawn. Following a hearing on December 3, 2004, the trial court denied the state's motion to withdraw its judicial confession and the matter proceeded to trial on December 6, 2004.
The case was tried before a jury on the issue of whether Dr. Apple's breaches of the standard of care caused damage to the Nestors, and if so, to what extent. At the conclusion of the trial, the jury awarded Nestor $100,000.00 for past and future mental anguish and costs. The jury did not award Nestor damages for past and future physical pain and suffering, disability, loss of enjoyment of life and lost wages. Mrs. Nestor was not awarded damages for her loss of consortium claim. An appeal by LSUHSC ensued, and the Nestors answered the appeal seeking an increase in the amount of damages awarded to $500,000.00, with costs and legal interest from date the original claim was filed.

DISCUSSION
On appeal, LSUHSC raises the following four assignments of error:
1. The jury abused its discretion in awarding Nestor any amount of damages, or in the alternative, damages in the amount of $100,000.00 in past mental and future mental anguish;
2. The trial court erred in failing to grant LSUHSC's exception of prescription as to the issue of lack of informed consent;
3. The trial court erred in not allowing LSUHSC to supplement and amend its answer and file a third party demand; and

*1279 4. The trial court erred in failing to grant the exception of lack of subject matter jurisdiction.

General Damage Award
In its first assignment of error, LSUHSC argues that the jury erred in granting an award for general damages or, in the alternative, that the jury erred in granting an excessive award.
General damages are those that may not be fixed with pecuniary exactitude. Mental and physical pain and suffering, inconvenience, loss of physical enjoyment, and other losses of lifestyle are damages that are not subject to exact measurement in monetary terms. Orea v. Scallan, 32,622 (La.App.2d Cir.01/26/2000), 750 So.2d 483; Simms v. Progressive Ins. Co., 38,804 (La.App.2d Cir.09/29/04), 883 So.2d 473, writ denied, 2004-2871 (La.01/28/05), 893 So.2d 78.
Because the trier of fact is given great and even vast discretion in setting general damage awards, an appellate court should rarely disturb an award of general damages. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). The initial inquiry in appellate review of general damages is "whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the `much discretion' of the trier of fact." Youn, supra; Simms, supra.
Thus, to determine whether the trier of fact abused its discretion in awarding damages, we must look first to the individual circumstances of the case. Only when the award is in either direction beyond that which a reasonable trier of fact could have assessed for the effects of the particular injury on the particular plaintiff under the particular circumstances should the appellate court reduce or increase the award. Youn, supra; Simms, supra. The award may then be raised or lowered only to the highest or lowest point reasonably within the discretion of the trier of fact. Orea, supra; Simms, supra. An appellate court should view the evidence in the light most favorable to the plaintiff in deciding whether an award is excessive. O'Brien v. Remington Arms Co., 601 So.2d 330 (La.App. 2d Cir.1992), writ denied, 604 So.2d 1003 (La.1992). If an articulated factual analysis shows an abuse of discretion by the trier of fact, then the appellate court may look to prior awards to determine the highest or lowest point within the trier of fact's discretion. Youn, supra; Simms, supra.
The standard of review for factual determinations is one of manifest error. Thus, for reversal, an appellate court must find that a reasonable factual basis does not exist for the finding and that the finding was clearly wrong. Brandt v. Engle, XXXX-XXXX (La.06/29/01), 791 So.2d 614. In reviewing a fact finder's determination that a doctor failed to obtain the patient's informed consent, the appellate court should focus on the duty of the doctor to provide material information to the patient under the circumstances of the particular case, and view the evidence in the light most favorable to the party who prevailed before the trier-of-fact. Lugenbuhl v. Dowling, 96-1575 (La.10/10/97), 701 So.2d 447.
In the case sub judice, the medical review panel found that Dr. Apple's conduct was below the expected standard of care in four respects. First, the panel found that there was a lack of required consent for surgery at level L5-S1. Second, the panel found that Dr. Apple's failure to inform the Nestors of the complication that occurred during surgery with a severed *1280 nerve root and the attempted repair was below the expected standard of care. Third, in view of the nerve root, the panel found that Dr. Apple's failure to take precautions to prevent a spinal leak by keeping Nestor in post surgery observation for at least 24 hours was a breach of the standard of care. Finally, the panel found that an absence of a narrative, operative report in the record was below the standard of care. Although the panel indicated that the surgery "may have been performed at the correct level" of L5-S1, the consent for surgery at that level and documentation was lacking. Hence, the medical review panel unanimously concluded that Dr. Apple failed to comply with the appropriate standard of care as charged in the complaint and that her conduct was a factor or a cause of the alleged resultant damage.
In material risk cases, the plaintiff must prove both that the breach of duty was a cause in fact of the damage and "that a reasonable patient in the plaintiff's position would not have consented to the treatment or procedure" because of the disclosed information. Lugenbuhl, supra. However, in a no-consent case that involves no physical damages, "the usual causation inquiry into whether a reasonable person in the patient's position would have consented if he or she had known of the risk that materialized is not applicable.. . ." Lugenbuhl, supra. Here, there was no consent by Nestor to perform surgery at level L5-S1, and, the jury found no physical damages were caused by Dr. Apple's breaches of standard of care, only mental anguish damages. Thus, we find LSUHSC's contention that Nestor would have still undergone the surgery had he been told of the risk is of no moment.
The methods of obtaining informed consent are set forth in La. R.S. 40:1299.40, which in pertinent part states:
A. (1) Notwithstanding any other law to the contrary, written consent to medical treatment means a handwritten consent to any medical or surgical procedure or course of procedures which: sets forth in general terms the nature and purpose of the procedure or procedures, together with the known risks, if any, of death, brain damage, quadriplegia, paraplegia, the loss or loss of function of any organ or limb, of disfiguring scars associated with such procedure or procedures; acknowledges that such disclosure of information has been made and that all questions asked about the procedure or procedures have been answered in a satisfactory manner; and is signed by the patient for whom the procedure is to be performed, or if the patient for any reason lacks legal capacity to consent by a person who has legal authority to consent on behalf of such patient in such circumstances. Such consent shall be presumed to be valid and effective, in the absence of proof that execution of the consent was induced by misrepresentation of material facts. (Emphasis added.)
* * *
C. Where consent to medical treatment from a patient, or from a person authorized by law to consent to medical treatment for such patient, is secured other than in accordance with Subsection A above, the explanation to the patient or to the person consenting for such patient shall include the matters set forth in Paragraph (1) of Subsection A above, and an opportunity shall be afforded for asking questions concerning the procedures to be performed which shall be answered in a satisfactory manner. Such consent shall be valid and effective and is subject to proof according to the rules of evidence in ordinary cases.
*1281 LSCHSC contends that the Nestors failed to show evidence that the L5-S1 surgery caused him damages. However, the medical review panel's unanimous decision determined that there was a causal connection between Dr. Apple's breach of the standard of care and the Nestors' claimed damages. Based on this finding, it was not unreasonable for the jury to conclude that Nestor suffered some mental anguish associated with the full understanding of what had transpired in the surgery with Dr. Apple.
The essential element of informed consent is knowledge. Here, the overwhelming evidence indicates that until Dr. Polin informed Nestor, he did not fully understand that Dr. Apple had performed surgery at a different level than originally indicated and that a complication had occurred during that surgery. The evidence showed that although Nestor suffered from depression before he underwent surgery by Dr. Apple, there was sufficient evidence that his depression worsened after his second surgery and being informed of Dr. Apple's breaches of the standard of care. Being the jury had the opportunity to hear the testimony of the witnesses, we do not believe it would be appropriate under these facts to second guess their interpretation of the extent of past and future mental anguish suffered by Nestor. Although the award of $100,000.00 may be on the high side, when reviewing it in a light most favorable to the Nestors, we can not say it was an abuse of the jury's vast discretion in setting this general damage award. See, Youn, supra. Hence, we find no merit to this assignment of error.

Prescription
In its next assignment of error, LSUHSC contends the trial court erred in failing to grant its exception of prescription as to the issue of informed consent.
Medical malpractice claims are subject to a one-year prescriptive period, that is, one year from the date of the act or from the date of discovery. However, regardless of the date of discovery, all claims must be filed within three years of the alleged act. La. R.S. 9:5628. Although the date of discovery may not generally be extended beyond the three year limit by interruption or suspension, an exception to prescription or peremption may be made for claims brought forth by an amending petition. See Randazzo v. State, Louisiana State University Health Sciences Center, XXXX-XXXX (La.App. 1st Cir.05/14/04), 879 So.2d 741, writ denied, XXXX-XXXX (La.02/18/05), 894 So.2d 337. "When the action . . . arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of filing of the original pleading." La. C.C.P. art. 1153. See Richard v. Colomb, XXXX-XXXX (La.App. 1st Cir.06/29/05), 916 So.2d 1122. A physician has a duty to inform the patient of (1) the nature and purpose of the procedure, and (2) the known material risks that may arise from the noticed procedure. La. R.S. 40:1299.40 A; Lugenbuhl, supra.
Here, the Nestors allege that they discovered the medical malpractice of Dr. Apple on February 16, 1999, the date the second surgery was performed by Dr. Richard Polin. Thus, they maintain that their action which was filed on January 12, 2000, was timely. However, LSUHSC argues that while the other elements of malpractice may not have been known until Mr. Nestor underwent his second surgery on February 16, 1999, the fact that surgery was performed at L5-S1 instead of L1-L2 which was not consented to, was known to the Nestors well before the February 16, 1999, surgery date. It asserts that the element of damage had prescribed when the claim was filed on January 12, *1282 2000. Mainly, LSUHSC argues that the Nestors had actual as well as constructive knowledge as far back as January 27, 1998, the date of Nestor's first surgery by Dr. Apple. To substantiate this contention, it relies heavily on Mrs. Nestor's testimony at trial. Specifically, Mrs. Nestor testified that after her husband's surgery, she recalled Dr. Apple saying "she had pushed on L4 with a blunt instrument, and that I should look for leakage, watch him, because  it busted, the disc broke when she pushed against it, and she took a couple of stitches in it."
However, when Mrs. Nestor's testimony is read in its entirety, she clearly states that Dr. Apple never informed her that surgery was done at a different level than the one originally consented to, nor had they been told that a nerve root had been severed during surgery which could cause serious complications. The fact that Dr. Apple told Mrs. Nestor that a disc burst during surgery does not equate to informing a lay person that surgery was performed on a different level than was consented to or that a nerve root was severed and repaired which may cause spinal fluid leakage.
As stated above, we find no evidence that clearly establishes that the Nestors understood that surgery was performed at a different level than originally shown on the consent form and that a complication had occurred prior to their consultation with Dr. Polin. Moreover, despite Mrs. Nestor's testimony that they received copies of the medical reports every time her husband went to the VA for clinical treatment, this would not necessarily put a lay person on notice that a surgical procedure was done differently than agreed to on a consent form. Such a conclusion would equate to holding a lay person to the same degree of knowledge as a medical professional. Furthermore, we do not find that the Nestors' ignorance of these facts was wilful, negligent, or unreasonable. See, Griffin v. Kinberger, 507 So.2d 821(La.1987), writ denied, 95-0130 (La.03/10/95), 650 So.2d 187. So considering, we find no error in the trial court's denial of the exception of prescription.

Motion to Supplement and Amend Answer
Next, LSUHSC argues that the trial court erred in not allowing it to supplement and amend its answer and file a third party demand. The record shows that LSUHSC answered the Nestors' petition on April 13, 2004, indicating that Dr. Apple was an employee of LSUHSC at the time of this alleged malpractice, and that the State of Louisiana was responsible for the actions of Dr. Apple under a vicarious liability theory. It contends that in June and July 2004, the State of Louisiana learned that a contract existed between LSUHSC and the VA whereby Dr. Apple was considered an employee of the VA, which it contends would make the United States the proper party defendant. LSUHSC then filed a motion for leave to file an amended answer and a third party demand. After a hearing on the matter, the motion was denied by the trial court, and subsequently, LSUHSC applied to this court for a supervisory writ, which we denied for being unwarranted.
LSUHSC now contends the denial of this motion by the trial court was an abuse of discretion. It argues that the only prejudice the granting of this motion would have caused the Nestors would be the fact that it did not file a suit in Federal Court after the VA denied the claims based on negligence. It also asserts that LSUHSC is the only party being prejudiced by the denial of this motion. After revisiting this issue, we find it without merit.
The state's letter on January 21, 2000, acknowledged that Dr. Apple was a qualified *1283 healthcare provider under the terms of the Malpractice Liability for State Services Act pursuant to La. R.S. 40:1299.39.1. On May 31, 2001, the VA denied the Nestors' Federal Tort Claim, stating that "[t]here has been no finding of negligence on the part of the United States." The record indicates that from January 21, 2000, until August 13, 2004, all indications from LSUHSC were that Dr. Apple was acting within the course and scope of her employment with them at the time of the alleged malpractice. Under these unusual facts, we do not find the trial court abused its discretion in precluding the state from supplementing and amending its answer and filing a third party demand. Based upon the actions of the state, we find it reasonable to conclude that the Nestors would find no grounds to continue pursuing a claim against the United States and VA in the federal court system. To grant LSUHSC's motion would now unjustly preclude the Nestors from filing a claim against the VA. Hence, we find this assignment is without merit.

Subject Matter Jurisdiction
In its last assignment of error, LSUHSC contends the trial court erred in denying its Exception of Lack of Subject Matter Jurisdiction. After hearing argument from both parties on the matter, the trial court denied the State's exception stating the following:
It's troubling to the Court that we are in a circumstance where an admission is made in the answer as to employment, the course and scope, and then as I appreciate this case, after a period of time has passed where the claim against someone else is no longer viable, they come back and say, "No, it isn't. It's all  she was under the employment of this other party." I mean, I  that's just plain wrong. That's just plain wrong. And I'm not saying Mr. Bookter is responsible for that, understand; but it's just not the way that litigation should be conducted. You can't say, "Well, for right now, I'll take responsibility," and then when your claim against this other entity is prescribed, then I'm going to say that I'm not responsible anymore. And that's why I refused to allow the amendment of the pleadings.
The trial court went on to say that it had previously dealt with the same issue twice in different contexts. Following the ruling by the trial court, LSUHSC applied to this court for a supervisory writ and stay, which was granted in part and denied in part and the case was remanded to the trial court for the following reasons:
The trial court's ruling on the denial of the exception is affirmed subject to the following. La. C.C. art. 1853 provides in pertinent part: "A judicial confession. . . may be revoked only on the ground of error of fact." That article requires the trial court to rule on whether an error of fact occurred which caused the judicial admission in this case. The article does not state that a revocation of a judicial confession can only be made in a limited procedural time period before trial. However, prejudice to the opponent of the revocation must be considered.
The record before us reflects that the test of La. C.C. art. 1853 has never been the subject matter of a hearing. If this is correct, a hearing on whether the judicial confession may be revoked shall be heard prior to trial.
Subsequently, LSUHSC filed a Motion to Withdraw Judicial Confession and a La. C.C. art. 1853 hearing was held on whether the state's judicial confession should be withdrawn. After hearing oral arguments, the trial court denied LSUHSC's motion to withdraw its judicial confession.
*1284 It is well established that a stipulation has the effect of a judicial admission or confession which binds all parties and the court. La. C.C. art. 1853; Lewis v. City of Shreveport, 36,659 (La. App.2d Cir.12/11/02), 837 So.2d 44; State Farm Mut. Auto. Ins. Co. v. Little, 34,760 (La.App.2d Cir.06/20/01), 794 So.2d 927. Stipulations between the parties in a specific case are binding on the trial court when not in derogation of the law. Such agreements are the law of the case. Winford v. Conerly Corp., XXXX-XXXX (La.03/11/05), 897 So.2d 560.
In this instance, the trial court acknowledged that the error of fact was not attributable to counsel for state who relied on Dr. Apple's own statements in writing that she did not have a contract with the VA. Nevertheless, the trial court reasoned that at this point in time, it became a question of detrimental reliance on the part of the Nestors. Moreover, despite the fact Dr. Apple was incorrect in her statements that she did not have a contract with the VA, it is still relevant that the state was a party to the contract with the VA and some constructive knowledge of same is attributable to it. Thus, we do not find the state's argument to be of merit that this was newly discoverable information which would not have any prejudicial impact on the Nestors. So, after being directed by this court to consider whether the withdrawal of the state's judicial confession would prejudice the opponent, we find the trial court correctly concluded that such a withdrawal would be very prejudicial to the Nestors. The matter has been given ample consideration and has no merit.

Answer to Appeal
Finally, in the their answer to this appeal, the Nestors request an increase in the general damage award. Although they argue that mental anguish cannot be realistically separated from the past and future physical pain and suffering, disability, loss of enjoyment of life, and lost wages that Nestor suffered or loss of Mrs. Nestor's consortium claim, we find the totality of the evidence substantiates the jury's finding that none of these remaining claimed damages are attributable to the breaches of standard of care by Dr. Apple. The only damage the evidence substantiates is some degree of mental anguish. We find the jury's award of $100.000.00 adequately compensates Nestor for his mental anguish damages. Hence, we find no manifest error on the jury's part in this regard. This assignment of error has no merit.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of these proceedings are assessed to LSUHSC in accord with La. R.S. 13:4521.
AFFIRMED.