916 So.2d 1122 (2005)
Bobbie Jo RICHARD
v.
Dr. Keith A. COLOMB.
Nos. 2004 CA 1145, 2004 CA 1146.
Court of Appeal of Louisiana, First Circuit.
June 29, 2005.
*1125 Matthew F. Block, Thibodaux, Counsel for Plaintiff/Appellee Bobbie Jo Richard.
Richard B. Ehret, Assistant Attorney General, New Orleans, Counsel for Defendant/Appellant State of Louisiana through the Department of Health and Human Resources.
Before: GUIDRY, GAIDRY, and McCLENDON, J.J.
McCLENDON, J.
In these consolidated medical malpractice cases, the defendant, Dr. John O. Dampeer, appealed the award of $35,000.00 in favor of plaintiff, Ms. Bobbie Jo Richard. Finding that the patient, Ms. Richard, was not informed that an unnecessary and unrelated educational procedure or technique might be undertaken by Dr. Dampeer during the consented to operation to remove her gall bladder, we affirm.

FACTS AND PROCEDURAL BACKGROUND
In 1993, Ms. Richard consented to and underwent a laparoscopic cholecystectomy at a hospital under the direction of the State of Louisiana, Department of Health and Hospitals, Office of Public Health. The consent form she signed advised Ms. Richard of the nature of that procedure, and of the material risks attendant to it. However, after the operation was essentially complete, Dr. Dampeer, a member of the surgical team, admittedly took a stitch on otherwise healthy fatty tissue solely for the purpose of practicing his technique. Metal staples were used in the operation, and stitching was not a necessary technique or part of the operation; nor was the stitch taken necessitated by an emergency situation. While taking the stitch, the needle was lost. Initially, the surgical team thought the needle had lodged in the patient's *1126 abdomen. A subsequent review of X-rays failed to reveal a needle.
On December 10, 1996, Ms. Richard filed a malpractice claim based on the allegation that the needle remained in her abdominal cavity. On January 14, 2000, after Ms. Richard discovered that the doctor had taken the unneeded stitch without her consent, she filed an amending and supplemental petition adding the lack of informed consent claim to her previously filed suit for malpractice.[1] Dr. Dampeer, and other defendants, filed a peremptory exception raising the objection of prescription, which was denied by the trial court.[2]See LSA-C.C.P. art. 927(1). After a trial by jury, the jury found that Dr. Dampeer performed "a medical procedure upon Bobbie Jo Richard without her informed consent," which caused her damages. For the failure to inform adequately, the jury awarded $35,000.00 in general damages.
On appeal, Dr. Dampeer assigned error to the trial court's denial of the exception of prescription and asserted that the plaintiff failed to meet her burden of proof on the consent claim. Specifically on the issue of proof, Dr. Dampeer argues that a stitch is not a material risk and that the stitch caused no damage.

PRESCRIPTION
Medical malpractice claims are subject to a one year prescriptive period, that is, one year from the date of the act or from the date of discovery. However, regardless of the date of discovery, all claims must be filed within three years of the alleged act. LSA-R.S. 9:5628. Although the date of discovery may not generally be extended beyond the three year limit by interruption or suspension, an exception to prescription or peremption may be made for claims brought forth by an amending petition. See Randazzo v. State, Louisiana State University Health Sciences Center, 03-1470, p. 8 (La.App. 1 Cir. 5/14/04), 879 So.2d 741, 745, writ denied, 04-1503 (La.2/18/05), 894 So.2d 337; Southside Civic Association, Inc. v. Warrington, 93-0890 (La.App. I Cir. 4/8/94), 635 So.2d 721, 723-24, writ denied, 94-1219 (La.7/1/94), 639 So.2d 1168; Scott v. Haley, 632 So.2d 793, 794-95 (La.App. 1 Cir.1993); International River Center v. Henry C. Beck Company, 95-1396 (La. App. 4 Cir. 4/10/96), 672 So.2d 1160, writ denied, 96-1185 (La.6/21/96), 675 So.2d 1083. "When the action ... arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of filing of the original pleading." LSA-C.C.P. art. 1153.
Both causes of action, the claims of malpractice for (1) the lost needle and (2) the lack of informed consent, arose during the same medical transaction or occurrence, that is, the operation on Ms. Richard. See Gunter v. Plauche, 439 So.2d 437, 440-41 (La.1983). Dr. Dampeer does not dispute that he took an unnecessary stitch, during said operation, without advising Ms. Richard of the educational procedure or obtaining her consent. The needle used to take the stitch was the same needle that was lost during the operation and was the subject of the original malpractice claim. Thus, although the lack of informed consent was not specifically mentioned in the initial petition, the doctor was on "notice that judicial relief was being *1127 sought arising from that general factual situation of [Dr. Dampeer's] conduct" during the operation. Gunter, 439 So.2d at 441; see Scott, 632 So.2d at 794-95. Nor, under the particular facts herein, do we see any prejudice to Dr. Dampeer based on the filing of the consent claim years after the date of the operation and initial suit filing. See Giroir v. South Louisiana Medical Center, 475 So.2d 1040, 1044-45 (La.1985) (sufficient notice to defendant and no prejudice found). Ms. Richard did not discover the unnecessary stitch was taken until 1999. In 2000, she filed a premature amending and supplemental petition adding the informed consent claim. Subsequently, she requested a medical review panel, which found that no malpractice occurred. In the same year as the panel's decision, 2002, Ms. Richard filed a third amending and supplemental petition again adding the consent claim to her suit. Thus, Dr. Dampeer had sufficient notice of the transaction or occurrence, and time to prepare his defense.
Because the original malpractice claim was timely filed, and the amendment adding the informed consent claim related back to the date of the filing of the original suit, the informed consent claim was timely. For these reasons, we find no error in the trial court's denial of the exception of prescription.

INFORMED CONSENT
"The requirement of consent to medical treatment was initially based on the idea that a competent person has the right to make decisions regarding his or her own body." Lugenbuhl v. Dowling, 96-1575, p. 4 (La.10/10/97), 701 So.2d 447, 450. The applicable version of the Louisiana informed consent statute,[3] Louisiana Revised Statutes 40:1299.40, provides as follows:
A. Notwithstanding any other law to the contrary, written consent to medical treatment means a consent in writing to any medical or surgical procedure or course of procedures which sets forth in general terms the nature and purpose of the procedure or procedures, together with the known risks, if any, of death, brain damage, quadriplegia, paraplegia, the loss or loss of function of any organ or limb, of disfiguring scars associated with such procedure or procedures, acknowledges that such disclosure of information has been made and that all questions asked about the procedure or procedures have been answered in a satisfactory manner, and is signed by the patient for whom the procedure is to be performed, or if the patient for any reason lacks legal capacity to consent by a person who has legal authority to consent on behalf of such patient in such circumstances. Such consent shall be presumed to be valid and effective, in the absence of proof that execution of the consent was induced by misrepresentation of material facts. (Emphasis added.)
Thus, a physician has a duty to inform the patient of (1) the nature and purpose of the procedure, and (2) the known material risks that may arise from the noticed procedure. LSA-R.S. 40:1299.40 A; see Lugenbuhl, 96-1575 at pp. 4-9, 701 So.2d at 450-53. Liability is based on the physician's breach of that duty. Lugenbuhl, 96-1575 at p. 9, 701 So.2d at 453.
The more common lack of informed consent case arises not from the failure to notify the patient of the type of procedure to be performed, but rather the *1128 failure to inform the patient of the material risks that may occur during the procedure. Material risk cases involve a slightly different inquiry than cases where the doctor undertakes a procedure without providing the patient with any information concerning the doctor's intention to perform the procedure itself. See Lugenbuhl, 96-1575 at pp. 7 & 14-15, 701 So.2d at 452 & 455. To determine the materiality of a risk, the nature of the risk and the likelihood of its occurrence are among the elements to be defined. "`Some' expert testimony is necessary to establish this aspect of materiality ...." Lugenbuhl, 96-1575 at p. 7, 701 So.2d at 451. "On the other hand, one can hardly argue that it is not below the standard of care for a doctor or nurse to perform a medical procedure without obtaining any kind of consent." Lugenbuhl, 96-1575 at p. 8 n. 5, 701 So.2d at 452 n. 5.
To recover damages, the plaintiff, after establishing a failure to inform the patient of a procedure or the attendant material risks, must also prove causation between the doctor's failure and the claimed damages. Otherwise, the doctor's conduct, however wrongful, has no legal consequence. In material risk cases, the plaintiff must prove both that the breach of duty was a cause in fact of the damage and "that a reasonable patient in the plaintiff's position would not have consented to the treatment or procedure" because of the disclosed information. Lugenbuhl, 96-1575 at p. 12, 701 So.2d at 454. However, in a no consent case that involves no physical damages, "the usual causation inquiry into whether a reasonable person in the patient's position would have consented if he or she had known of the risk that materialized is not applicable...." Lugenbuhl, 96-1575 at p. 14 & n. 9, 701 So.2d at 455 & n. 9.
The standard of review for factual determinations is one of manifest error. Thus, for reversal, an appellate court must find that a reasonable factual basis does not exist for the finding and that the finding was clearly wrong. Brandt v. Engle, 00-3416, p. 10 (La.6/29/01), 791 So.2d 614, 621. In reviewing a factfinder's determination that a doctor failed to obtain the patient's informed consent, the appellate court should focus on the duty of the doctor to provide material information to the patient under the circumstances of the particular case, and view the evidence in the light most favorable to the party who prevailed before the trier-of-fact. Lugenbuhl, 96-1575 at p. 11, 701 So.2d at 453-54.
Although one defense expert recognized a difference between a stitch taken as part of the procedure and a stitch taken solely for educational purposes, the medical experts focused on the stitch itself as if it was part of the overall noticed operation. All the medical experts testified that a stitch was not a material risk of the operation, and that they did not believe that taking the stitch breached the standard of care. Thus, if the stitch taken had been a part of the noticed procedure, Ms. Richard may have had no basis for recovery. However, no information of any kind was provided to Ms. Richard concerning the unnecessary educational stitch taken by Dr. Dampeer.[4]
The essential element of informed consent is knowledge. The first information provided to the patient must be notification of the "nature and purpose of the procedure or procedures ...." *1129 LSA-R.S. 40:1299.40 A. Only then, after the patient has at least a general sense of the procedure to be performed and the purpose of the doctor's actions, can the material risks be recognized, and properly addressed and weighed by the patient. We do not read the informed consent statute as a waiver of the patient's right to be notified of the nature and purpose of a second procedure to be performed by a surgeon while the patient is under anesthesia, simply because the surgeon informed the patient of another procedure.
The focus here is not the number of stitches or the relative safety of a single stitch taken in a noticed procedure. Rather, the focus is the unnecessary quality of the stitch; a fact that separated the stitch from the consented to operation, and established a secondary procedure. Thus, a two prong analysis is required to determine whether the procedure or technique is both (1) unrelated and (2) unnecessary. Under the unique circumstances of this case, that separate, unnecessary practice or educational procedure required additional informed consent. In the absence of notice and consent to the possibility that a second procedure may be undertaken, the doctor violated his legal duty to inform the patient. Although a general consent to educational or practice procedures may have sufficed, the patient should have been told that the surgeon may practice additional procedures or techniques on the patient's body in some manner outside the normal course of the primary, consented to operation, and outside any necessary emergency treatment. After informing the patient of the possibility of an educational procedure separate from the consented to primary operation, the doctor would then inform the patient of any material risks that may arise from the secondary educational procedure or that the procedure involved little or no risk.[5]
Certainly, patients, including Ms. Richard, have the right to refuse a secondary practice or educational procedure not necessary to the primary operation. Specifically, when asked during the trial if she would have consented to practice surgery, Ms. Richard responded, "No, I wouldn't have.... I was scared as it was just going through the surgery. I wasn't going to, you know; take any risk of them doing anything extra." Although a no consent case may not require proof that a reasonable person would not have consented, the record here supports such a determination. See Lugenbuhl, 96-1575 at pp. 14-16 & n. 9, 701 So.2d at 455-56 & n. 9. Thus, we find no error in the jury's finding that Dr. Dampeer breached his duty by performing a medical procedure upon Ms. Richard without her consent.

DAMAGES
"[T]he doctor's breach of duty caused plaintiff to undergo a medical procedure... for which the doctor failed to provide adequate information[,]... thereby causing damages to plaintiff's dignity [and] privacy," and depriving her of the "opportunity of self-determination in regard to subjecting [herself] to an unwanted procedure." Lugenbuhl, 96-1575 at pp. 14-15, 701 So.2d at 455. Such damages are compensatory and appropriate. Lugenbuhl, 96-1575 at pp. 14-16, 701 So.2d at 455-56. A doctor may not patronize a patient and, without the patient's permission, mentally reserve the sole right to decide whether an unconscious patient should undergo a separate, unnecessary educational procedure. See Lugenbuhl, 96-1575 at p. 14, 701 So.2d at 455.
*1130 After considering the particular injury to this particular plaintiff, we find that $35,000.00, although at the high end of the appropriate range, is not an abuse of the trier of fact's "vast" discretion in the award of damages. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1260-61 (La.1993). Thus, we affirm the award of $35,000.00 for the invasion of privacy and deprivation of her right to determine whether she should undergo an unnecessary procedure performed solely for an educational purpose.
For these reasons, the judgment is affirmed. The costs of the appeal, $1918, are assessed to defendant-appellant, Dr. John Dampeer.
AFFIRMED.
GUIDRY, J., concurs in the result.
NOTES
[1] In her suit, plaintiff named other defendants. However, the other defendants were dismissed, and the jury ruled against plaintiff on the lost needle malpractice claim. Those holdings have not been appealed.
[2] The defendant applied for a writ to this court, which was denied on November 5, 2001. Richard v. State of Louisiana, Department of Health and Hospitals, Office of Public Health, et al., 2001 CW 2622.
[3] For our purposes, the substantive portions of the statute are essentially the same as in the current version.
[4] Although not the case here, if stitching was necessary to a consented to operation, an exemplary stitch at the end of a series should not automatically be re-characterized as unrelated, and thus unnecessary to the noticed operation. Each case must be reviewed under its particular facts.
[5] The record reasonably supports a finding that Dr. Dampeer did not form a clear intent to perform an educational procedure until the end of the surgery. Further, it is unclear whether Dr. Dampeer intended to continue practicing but for the loss of the needle.